IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-0520-CV-W-DW |
| | ) | |
| LANCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Doc. 28). Plaintiff has filed his response (Doc. 36) and Defendant, its reply (Doc. 39). During the consideration of the pending motion the parties have filed additional motions with the Court. Defendant has filed a motion to strike Plaintiff's Suggestions in Opposition and for fees and costs (Doc. 40) and a motion to stay proceedings pending consideration of dispositive motion (Doc. 54). Additionally, Plaintiff has filed a motion for leave to file its pretrial filings out of time (Doc. 49).

For the following reasons the Court: grants Defendant's motion for summary judgment; denies Defendant's motion to strike and for fees and costs; and denies as moot Plaintiff's motion for leave to file out of time and Defendant's motion to stay.

I.  Background

Plaintiff, Charles Riley, was employed by Defendant Lance, Inc. ("Lance") continuously from 1974 to 2004 without an express written employment contract. At the time of his termination in 2004, Mr. Riley was employed as a District Account Manager in Kansas City. As a District Account Manager, Mr. Riley was responsible for creating new accounts and maintaining or growing existing accounts, including selling new products to existing accounts.

In fulfilling these responsibilities as the District Account Manager, he would work with other Lance sales representatives and, for certain accounts, directly with the customer. On March 12, 2004, Riley was terminated by Lance for unsatisfactory performance.

The parties do not dispute that sales in the Kansas City district were below Lance's expectations. The record establishes that Lance's management was making concerted efforts to improve sales performance in the Kansas City district. In August 2003, Mr. Riley's immediate supervisor and District Sales Manager for Kansas City, Chuck Windham, was terminated by Lance. Beginning in November 2003, Riley was supervised by Mr. Lawrence Dumas, who, as of that date, became the District Sales Manager for two districts, Dallas and Kansas City. The record indicates that Riley's sales numbers for the year 2003 were down from the previous year and were below his 2003 projections. On December 4, 2003, Mr. Dumas sent Mr. Riley, a memorandum indicating that accounts he was responsible for were down. Mr. Riley admits to receiving this memorandum. The memorandum sets forth eight actions to be completed by Mr. Riley with corresponding deadlines. In a meeting held on January 15, 2004, Mr. Dumas placed Mr. Riley on probation and set specific goals to achieve, as described in a Performance Development Plan ("PDP"), in order to preserve his employment. These goals included: (1) performing three "work-withs" each week with a Branch Sales Manager, and to provide Mr. Dumas with a weekly report; (2) increase the distribution of specific enumerated key product lines in specific enumerated accounts; (3) annual performance growth in five specific accounts; and (4) the full compliance of all accounts with the terms of active Corporate Marketing Agreements. The PDP required 100% satisfaction of all targets described therein with progress to be evaluated at 30 and 60 days. At this meeting, Mr. Riley complained that one of the

specified accounts in item (3), Food-4-Less, was not an active account and further was not his account. Mr. Dumas disagreed and the target was retained.

Mr. Riley and Mr. Dumas met during the week of February 16, 2004 to discuss progress. During the meeting, Mr. Dumas noted a general failure to satisfy the work-with reporting requirement. In a followup email, Mr. Riley admitted to not performing a "work-with" during the the week of February 16, 2004. The record indicates that Mr. Riley failed to make any sales on the Food-4-Less account. On March 11, 2006, Mr. Riley met with Mr. Dumas and was terminated for failure to achieve the targets laid out in the PDP.

II. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the adverse party and allows the adverse party the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Inland Oil and Transp. Co. v. United States, 600 F.2d 725, 727-28 (8th Cir. 1979). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, the evidence favoring the nonmoving party must be more than "merely colorable." Id. at 249-50.

A. Count I - MHRA: discrimination on basis of age

A claim of age discrimination under the MHRA is analyzed according to the standards

applicable for cases under the Age Discrimination in Employment Act ("ADEA").  Calder v. TCI Cablevision of Missouri, Inc., 298 F.3d 723 (8th Cir. 2002).  In a case where a plaintiff relies on circumstantial evidence of discrimination the McDonnell Douglas burden-shifting scheme applies.  Id.  As the first step in this scheme, the plaintiff must establish a *prima facie* case by showing that: (1) he is a member of a protected group; (2) he was performing his job at a level that met with the employer's legitimate expectations; (3) he was discharged; and (4) he was replaced with a younger person.  Id.  Lance argues that Riley's sales performance was below expectations and he, therefore, failing element (2), cannot establish a *prima facie* case.  The Court agrees.

The Court finds the Calder case controls here.  In Calder, the Eighth Circuit affirmed the decision of the district court granting summary judgment in favor of an employer where the employee failed to establish that she was performing her job to the employer's legitimate expectations.[1]  The plaintiff had received acceptable performance reviews until a management change precipitated new requirements and standards of performance.  The plaintiff was ultimately terminated for failure to meet her sales budget and to comply with various new procedures.  In support of its holding the court noted that a failure of the standard of legitimate expected performance may be found when an employee fails to meet significant expectations, even if she meets some other expectations.  Id.  The court also instructed that for a salesperson, sales volume is a principle indicator of whether a salesperson has met the employer's legitimate expectations.  Id.

---

[1] The district court granted summary judgment based on plaintiff's failure to show pretext; the court of appeals affirmed the decision but rejected the pretext analysis, instead holding plaintiff failed to establish the third element of the *prima facie* case.

4

The undisputed facts establish that Mr. Riley's sales performance did not meet Lance's expectations. His 2003 sales performance was ranked 16 out of 18 Lance District Account Managers nationwide. Furthermore, Mr. Riley's 2003 sales numbers were down from the previous year and were down relative to his own 2003 projected sales. Mr. Riley does not deny that his overall sales numbers were down but rather points to particular accounts or quarters where his sales performance was up.

Additionally, rather than address his deficient performance prior to being placed on probation, Mr. Riley contends that he met Lance's expectations by satisfying all the legitimate requirements of his PDP. While Lance could have simply terminated Mr. Riley for poor sales performance, management gave him one last chance to retain his position and demanded 100% compliance with the requirements set forth in the PDP. Although Mr. Riley frequently states in his Suggestions in Opposition that he satisfied the requirements of the PDP, the record unequivocally demonstrates that he satisfied some of the requirements of the PDP, but not all. Mr. Riley claims that where he was unable to satisfy the PDP requirements, it was due to interference by Lance. Specifically, Mr. Riley argues that Mr. Dumas prohibited employees from performing "work-withs" with him. However, this is inconsistent with Plaintiff's own statements. In his deposition Mr. Riley states that he did not believe this was done to prevent him from complying with his requirements under the PDP. Notwithstanding the "work-withs" where scheduling conflicts resulted, the record indicates that Mr. Riley otherwise failed to perform the required three weekly "work-withs" under the PDP.

Plaintiff also contends that one of the five accounts he was required to grow under the PDP, Food-4-Less, was not his account or was inactive. However, this contention is inconsistent

5

with Mr. Riley's own projections for 2003 that included the disputed account—his projections made at the annual planning and review meeting in December 2002 included growing this account from $0 to $225,000 during 2003. Although the record establishes that Mr. Riley was successful in growing sales in the other four accounts targeted in the PDP, no progress was made on Food-4-Less.

Thus, the Court finds that Plaintiff has failed to establish a *prima facie* case under Calder and summary judgment in favor of Defendant Lance is appropriate.

### B. Count II - Deliberate and willful conduct MHRA

Plaintiff's disparate treatment claim alleges that Lance engaged in a pattern or practice of discriminatory treatment of employees aged 50 or older. To establish a prima facie case of pattern-or-practice discrimination, a plaintiff must prove that the employer regularly and purposefully treated members of the protected group less favorably and that unlawful discrimination was the employer's "regular procedure or policy." E.E.O.C. v. McDonnell Douglas Corp., 191 F.3d 948, 951 (8th Cir. 1999) (internal citations and quotations omitted). Proving isolated or sporadic discriminatory acts by the employer is insufficient; it must be established that discrimination was the company's standard operating procedure—the regular rather than the unusual practice. Id. (internal citations and quotations omitted).

Plaintiff has presented no statistical evidence to support his claim that facially neutral practices have caused a "significant, adverse and discriminatory impact upon persons over the age of 50." (Pl. Compl. ¶ 16.) Nor has Plaintiff presented other evidence supporting the claim that Mr. Dumas "concocted a plan to systematically find that older employees were unable to meet new and unknown performance standards." (Pl. Compl. ¶ 18.) Plaintiff's remaining

6

evidence demonstrates, at most, isolated acts on the part of certain managers and not a "regular procedure or policy" employed by Lance. The Court concludes that no reasonable jury could find that Lance engaged in a pattern or practice of discrimination against employees aged 50 or older and summary judgment in favor of Defendant Lance is appropriate.

### C.     Count III - Promissory Estoppel

A claim for promissory estoppel requires: (1) a promise, (2) detrimental reliance on that promise by plaintiff, (3) that defendant could have reasonably foreseen the action plaintiff took in reliance, and (4) injustice can be avoided only by enforcement of the promise. Moore v. Missouri-Nebraska Expres, 892 S.W.2d 696, 703 (Mo. App. 1994).

Missouri case law unequivocally states that, absent a statutorily prohibited reason for discharge, the employer remains free to fire any employee-at-will for any reason. Dake v. Tuell, 687 S.W.2d 191 (Mo. banc 1985). Thus, a former at-will employee cannot recover from a former employer on theory of promissory estoppel, because no promise was broken in the employee's discharge. Walker v. Modern Realty of Missouri, Inc., 675 F.2d 1002, 1004 (8th Cir. 1982). Nor can promissory estoppel be used to reanimate a promise for at-will employment into a fully enforceable contract. Morsinkhoff v. DeLuxe Laundry and Dry Cleaning, 344 S.W.2d 639, 644 (Mo. App. 1961). While a plaintiff may bring a promissory estoppel claim based on a promise of future at-will employment, Missouri law clearly prohibits recovery by a discharged employee. Bower v. AT&T Technologies, 852 F.2d 361 (8th Cir. 1988). Even in Bower, the court noted that once an employee has been hired, the employer has complied fully with its obligation and may discharge the employee or change the terms of employment. Id. at 363; see also Walker v. Modern Realty of Missouri, Inc., 675 F.2d 1002, 1004 (8th Cir. 1982) (former

7

employee could not recover from former employer on theory of promissory estoppel, because no promise was broken in the former's discharge). Finally, in Missouri the doctrine of promissory estoppel is resorted to in extreme cases and only to avoid unjust results. See Meinhold v. Huang, 687 S.W.2d 596, 599 (Mo. App. 1985).

Plaintiff directs the Court to Prenger v. Baumhoer, 939 S.W.2d 23, 26 (Mo. App. 1997), proposing that under Missouri law "[i]n promissory estoppel cases the focus is upon how the alleged promise provokes reliance rather that a simple promise in isolation." (Pl. Suggestions in Opp. p. 10.) Plaintiff's reliance on Prenger is misplaced. First, the full text of the quoted sentence is: "**It has been suggested that**, in promissory estoppel cases, the focus should be on how the promise relates to its ability to provoke reliance rather than just the promise in isolation," with the court citing two treatises. 939 S.W.2d at 27 (internal quotations omitted) (emphasis added). Second, in spite of the above-quoted statement, the court explicitly rejects this proposition basing its decision entirely on the nature of the promise itself, holding that a letter entitled as a "tentative agreement" did not amount to a promise sufficient to support a promissory estoppel claim. Id. at 28.

Plaintiff claims that, even if he is an at-will employee, the PDP constituted a promise of continued employment by Lance if he met the goals described therein. (Pl. Suggestions in Opp. p. 10.) The Court disagrees. On its face the PDP reveals no promise of continued employment. (Ex. 14 to Pl. Deposition.) Under the cases cited above, the PDP does not provide a basis for a promissory estoppel claim.

Although not argued in his brief, Plaintiff states in his Petition that a "promise" was created by Lance's employee handbook. (Pl. Pet. ¶ 22.) This argument also fails. Missouri

8

courts have held that an employee handbook does not create an employment contract. Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661 (Mo. banc 1988).

Accordingly, the Court finds Missouri law precludes Plaintiff's claim for promissory estoppel and summary judgment in favor of Defendant Lance, Inc. is appropriate.

III.     Motion to strike and for fees and costs

Defendant argues that Plaintiff's Suggestions in Opposition violate Local Rule 56.1 and contain numerous procedural and substantive misrepresentations. Defendant also cites to other incidents where Plaintiff has failed to comply with Rule 16 and other orders of the Court relating to filing deadlines. Indeed, Defendant's argument is bolstered by the fact that Plaintiff has now requested leave to file his pretrial filings out of time. The Court agrees that it has the inherent power to enforce the Federal Rules of Civil Procedure, the local rules, and its own orders. See Jones v. UPS, 2006 WL 2404041 (8th Cir.). Nonetheless, without engaging in a detailed analysis of the items listed in Defendant's brief, the Court finds that any purported violations do not rise to a level warranting the harsh sanction of striking Plaintiff's Suggestions in Opposition. Whatever its flaws, Plaintiff's briefing and rule compliance are not as egregious as those described in Jones v. UPS. Accordingly, the motion is denied.

IV.     Conclusion

The Court ORDERS that:

1)     Defendant's motion for summary judgement (Doc. 28) is GRANTED as to all Counts in Plaintiff's complaint.

2)     Defendant's Motion to Strike Plaintiff's Suggestions in Opposition and for Fees and Costs (Doc. 40) is DENIED.

9

3) Plaintiff's Motion for Leave to File Out of Time (Doc. 49) is DENIED as moot.

4) Defendant's Motion to Stay (Doc. 54) is DENIED as moot.

Date: September 21, 2006                      /s/ DEAN WHIPPLE
                                                                                   Dean Whipple
                                                                  United States District Court